Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Geraldine Soat Brown | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6261 | **DATE** | 5/25/2001 |
| **CASE TITLE** | Chen vs. Mayflower | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Plaintiff's motion for leave to file instanter plaintiff's second amended complaint is granted. Enter Memorandum Opinion and Order /s/ Geraldine Soat Brown

(11) ■ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | MAY 31 2001 date docketed | 49 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | FILED FOR DOCKETING | 5/29/2001 | |
| | Copy to judge/magistrate judge. | 01 MAY 31 PM 5: 05 | date mailed notice | |
| tw | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANGIE CHEN, <br>     Plaintiff/Counter Defendant, <br><br> v. <br><br> MAYFLOWER TRANSIT, INC., <br>     Defendant/Counter Plaintiff. | Case No. 99 C 6261 <br><br> Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the Plaintiff's Motion for Leave to file Instanter Plaintiff's Second Amended Complaint. [Dkt #42.] The defendant filed its Response to Plaintiff's Motion to Amend [Dkt #38], the plaintiff filed a Reply in Support of her Motion [Dkt #40], and the Court heard oral argument. For the reasons set out below, the Plaintiff's Motion is GRANTED.

## PROCEDURAL BACKGROUND AND JURISDICTION

This case arises from a 1999 contract between Plaintiff Angie Chen ("Chen") and Defendant Mayflower Transit, Inc. ("Mayflower") for the movement of Chen's furniture and household goods from Atlanta, Georgia to Chicago, Illinois. Chen alleges, *inter alia*, as follows: Mayflower, through Admiral Moving and Storage, Inc. ("Admiral"), its agent in Georgia, gave Chen a "not to exceed" estimate of $1,741.89 for the move. Chen's property did not arrive in Chicago as scheduled, causing Chen to incur expenses. When the property did arrive, Mayflower, again through a local agent Century Moving and Storage, Inc. ("Century"), would not release Chen's goods unless she paid $2,641.19 in cash or certified check. Because Century would not accept a credit card, Century

1

placed Chen's goods in storage and threatened to auction them to pay both the moving costs and storage costs, totaling $5,122.83. Chen's property remained in storage for three months. (Proposed 2nd Am. Compl. at ¶¶ 6-57.) Chen alleges three other similar occurrences in which Mayflower and its local agents issued cost estimates to individuals–Craig Pietrowiak, Kate Rice, and Gerald and Minna Aronoff– and subsequently refused to release the individual's property unless the individual agreed to pay more than the original estimate. (*Id.* at ¶¶86-113.)

Jurisdiction exist pursuant to 28 U.S.C. §1331. Chen's breach of contract and conversion claims are brought pursuant to the Carmack Amendment (49 U.S.C. §14706), and thus, there is jurisdiction under 28 U.S.C. §1331 for those claims and the proposed RICO claim. There is supplemental jurisdiction under 28 U.S.C. §1367 for plaintiff's state law claims of negligent and intentional infliction of emotional distress.[1]

Chen initially filed her Complaint on September 23, 1999, alleging breach of contract, conversion, and both intentional and negligent infliction of emotional distress. [Dkt #1.] She filed an Amended Complaint on November 23, 1999. [Dkt #10.] On January 13, 2000, Mayflower filed its Answer and Counterclaim for $5,573.38 allegedly due and owing from Chen. [Dkt # 15.] When this case was reassigned to this Court in June 2000, expert discovery was underway and a trial date

---

[1] Chen also alleges diversity jurisdiction pursuant to 28 U.S.C §1332. Chen alleges, and Mayflower admits, that Chen is a citizen of Illinois. (Am. Answer and Counterclaim at ¶1.) [Dkt 35.] Chen alleges that Mayflower is a Missouri corporation with its principal place of business in Missouri. (Proposed 2nd Am. Compl. at ¶2.) Initially Mayflower admitted that allegation. (Answer and Countercl. at ¶2.) [Dkt 15.] In its Amended Answer, Mayflower answered that it is a Missouri limited liability company headquartered in Missouri. (Am. Answer and Counterclaim at ¶2.) There is no allegation as to the citizenship of the members of the limited liability company, and therefore, diversity jurisdiction is not adequately established. *See Cosgrove v. Bartolottta*, 150 F.3d 729, 731 (7th Cir. 1998): Citizenship of an LLC for purposes of diversity jurisdiction is the citizenship of its members.

had been set. [Dkt #22.] In September 2000, Mayflower was given leave to file an Amended Answer and Counterclaim [Dkt #31,32], which it filed on November 13, 2000. [Dkt # 35.]

On December 8, 2000, Chen filed the present motion for leave to file a Second Amended Complaint, in order to add proposed Count V, a claim under the Racketeer Influenced Corrupt Organizations Act (18 U.S.C. §1961, *et seq.* (RICO)). Mayflower objected to Chen's proposed amendment, and filed Defendant's Response to Plaintiff's Motion to Amend Complaint.

## ANALYSIS

Federal Rule of Civil Procedure 15(a) requires that, once a responsive pleading has been filed, a party may amend its pleading only by consent of the adverse party or by leave of court, and "leave shall be freely given when justice so requires." On the other hand, leave to amend may be denied if there is "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

> "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In reviewing for "futility," the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion.

*Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)(citations omitted.) A complaint may not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45 (1957).

### Chen's proposed amendment was not dilatory and will not result in undue delay.

Mayflower first argues that Chen should not be permitted to amend because Chen's motion was filed after fact discovery had closed. However, viewed in light of the history of this case set out

3

above, that argument does not overcome Rule 15's directive that leave to amend should be "freely given." Chen's present motion to amend was filed a little over a year after her initial complaint, and less than a month after Mayflower filed its Amended Answer and Counterclaim. Chen argues that her counsel first learned of the facts that might give rise to a RICO claim in late October 2000 when he learned of the case *Pietrowiak v. Century Moving & Storage, Inc.*, 99 C 7419, 1999 WL 1295133 (N.D. Ill., Dec.20, 1999). In that case, Judge James Moran of this Court dismissed an action brought against Century because the proper defendant was Mayflower. According to Chen, the similarity between Pietrowiak's allegations and Chen's claims prompted counsel to investigate the possibility of a RICO claim. (Pl.'s Mot. at 3-4.) Plaintiff's present motion was filed promptly after counsel completed his investigation. *(Id.* at 4.) Mayflower argues that Chen should have learned of *Pietrowiak* earlier (Def.'s Resp. at 4), but the facts do not demonstrate Chen was dilatory in the sense of failing to plead a claim based on facts known to her.

Mayflower has not claimed that it will be prejudiced by the delay in resolution of its counterclaim if Chen's motion is granted and the trial of this case delayed. As Mayflower admits, its counterclaim is "nominal" and the amount claimed was actually reduced in its latest amendment. (Def.'s Resp. at 4.) The gravamen of Mayflower's argument is that Chen's proposed amendment may transform a relatively simple lawsuit in which Mayflower contemplated a motion for summary judgment into a more complex litigation that will require additional discovery. (Def.'s Resp. at 4-5.) However, Mayflower does not argue that Chen's RICO claim is time-barred. Thus, if Chen is not permitted to file her RICO claim in this litigation, she presumably could bring it as a separate action, which would result in more duplication of effort and expense than if the claim is brought in this proceeding. This case is distinguishable from *Sanders v. Venture Stores, Inc.*, 56 F.3d 771 (7th Cir. 1995), cited by Mayflower, where the plaintiff filed her motion to amend after the defendant filed

4

an ultimately-successful motion for summary judgment, and the plaintiff sought in its amendment to assert federal claims that would be time-barred but for the relation-back doctrine. 56 F.3d at 775, n.2. The Federal Rules of Civil Procedure favor resolving all of the disputes between the same parties that arise out of the same transaction in a single action where possible to bring about the "just, speedy and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, there is no reason to deny Chen's motion on the basis of undue prejudice or delay.

### Chen's Proposed Amendment is not Futile.

Mayflower's second argument is that Chen has failed to plead the necessary elements of a RICO claim. The statute under which Chen seeks to bring Count V, 18 U.S.C. §1962(c), makes it unlawful for "any person employed by or associated with [an] enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Mayflower argues that Chen's proposed Count V does not allege "an enterprise," a "pattern" or "racketeering activity."

### 1. The enterprise requirement.

With respect to the enterprise requirement, Chen's proposed Count V alleges, in essence, the following: Mayflower contracts with regional shipping companies that act as local disclosed agents of Mayflower and provide marketing, sales, pick-up, hauling, storage and delivery services pursuant to Mayflower's authority. (Proposed 2nd Am. Compl. ¶59.) Mayflower itself does not provide any packing, unpacking, or hauling services directly to customers. (*Id.* at ¶60.) Mayflower requires that its local agents comply with written guidelines regarding line haul charges, discounts and other standards. (*Id.* at 59.) Mayflower's local agents, in turn, contract with individual shippers to transport household goods across interstate lines. (*Id.* at ¶61.) The communications between and

5

among Mayflower, the local agents and individual shippers take place through Mayflower's central database and computer system using interstate wires. (*Id.* at ¶61.) Chen defines the "Enterprise" as Mayflower and the local disclosed agents associated together on an ongoing basis and joined in the common goal of marketing, booking, packing, hauling, storing and delivering interstate shipments of household goods. (*Id.* at ¶62.) Mayflower participates in the Enterprise by issuing guidelines, providing a means of centralized communication, maintaining a customer service line for the Enterprise's shipping customers, approving credit transactions, overseeing operations, taking in and distributing all revenues, and providing the authority (pursuant to federal regulations) under which it and the other members of the Enterprise operate. (*Id.* at 64.) The local agents participate by booking shipments for the Enterprise, issuing estimate orders, determining what discounts apply and performing services such as packing, hauling, loading and unloading. (*Id.* at 65.)

Mayflower argues that these allegations do not properly plead the enterprise requirement because Mayflower and its agents are one person, citing *Wagner v. Magellan Health Services, Inc.*, 121 F.Supp.2d 673 (N.D. Ill. 2000) for the proposition that a corporation cannot conspire with its employees or agents. (Def.'s Resp. at 9-10.) However, as Chen notes, the statement that Mayflower cites from *Wagner* was made in connection with Sherman Act claims. 121 F.Supp 2d at 673. Further, in that opinion, the District Court stated that a firm and *its employees* cannot be a RICO enterprise. 121 F. Supp. 2d at 683-84, emphasis added.[2]

---

[2] The issue of whether employees who associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation form an entity distinct enough from the corporation to be a RICO enterprise is currently before the United States Supreme Court in *Cedric Kushner Promotions Ltd. v. King*, 00-549, argued April 18, 2001. 69 LW 3679 (April 24, 2001).

At issue is whether Mayflower (the RICO "person") is distinct enough from the alleged Enterprise to meet the requirements of RICO. The case law demonstrates that the issue is more complex than suggested by Mayflower's argument. Chen's allegations meet the "distinctness requirement" that the RICO person to be an entity separate from the enterprise whose affairs it conducts. *Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 747 F.2d 384, 400 (7th Cir. 1984). However, under Seventh Circuit precedent, the RICO enterprise must be more than an association to conduct the normal affairs of the RICO person. *Majchrowski v. Norwest Mortgage, Inc.*, 6 F.Supp.2d 946, 955 (N. D. Ill.1998) (collecting cases). It is not correct that a RICO enterprise cannot consist of a corporation and its disclosed agents. *See Fitzgerald v. Chrysler Corp.* 116 F.3d 225, 228 (7th Cir. 1997): "Maybe a manufacturer could use its dealers or other agents or affiliates in such a way as to bring about the sort of abuse at which RICO is aimed, in which event it might be possible to characterize the assemblage as a RICO enterprise." However, distinctness is not found where a corporation deals with its agents in the ordinary way so that the agents' role in the corporation's illegal acts is entirely incidental. (*Id.*) The focus is whether the person and the other alleged participants in the enterprise are legally distinct entities and each played a distinct role within the purported scheme. *Majchrowski*, 6 F. Supp. 2d at 956-58.

Here, the alleged participants in the Enterprise are separate corporate entities, and Chen alleges distinct roles in the RICO Enterprise for the local agents and for Mayflower. The local agents conduct activities, such as hauling and packing, that Mayflower does not do. Under the scheme alleged by Chen, the local agents' refusal to relinquish the victim's goods unless the allegedly improper price is paid is critical to the success of the scheme. Mayflower allegedly provides the interstate authority and the communication links (including computer system) via interstate wire, and receives and disburses the receipts from the Enterprise to the other participants

7

in the Enterprise. Significantly, Chen's RICO claim can fairly be read to allege that the wrongful activities that the agents perform for the Enterprise are beyond the activities they undertake as agents for Mayflower: The activity of the Enterprise is the extortion and sharing of *improper additional amounts* beyond the initial estimates that would be the proper contract compensation for Mayflower and its agents. Chen has sufficiently pleaded the enterprise requirement of a RICO claim.

2. Racketeering activity.

Mayflower also argues that Chen has not pleaded illegal activities. Chen's proposed Count V alleges that the Enterprise engaged in mail and wire fraud (in violation of 18 U.S.C §1341 and 1343) by way of false promises and misrepresentations that the cost of her move was guaranteed not to exceed $1741.89; theft from interstate shipment (in violation of 18 U.S.C.§659) by taking Chen's goods by fraud or deception after she had placed them in possession of a common carrier traveling in interstate commerce, with intent to convert the goods to the Enterprise members' use; and extortion (in violation of 18 U.S.C. §1951) by use of threatened force against her property in an effort to obtain more than the estimated cost. (Proposed 2nd Am. Compl. at ¶¶ 67-82.)

Mayflower claims that Chen fails to plead mail or wire fraud because she has not pleaded a misrepresentation of fact. (Def.'s Resp. at 6.) However, Mayflower also cites *Richards v. Combined Insurance Co.*, 55 F.3d 247, 251-52 (7th Cir. 1995), in which the Seventh Circuit stated that mail fraud does not encompass all of the strict requirements of common law fraud, and, thus, false pretenses and promises as well as misrepresentations of present fact are within the scope of RICO liability for mail or wire fraud. Chen pleads with specificity that Admiral, Mayflower's local agent in Georgia, represented that the cost of the move was "guaranteed not to exceed" $1,741 and that Chen could pay with a credit card, and also pleads that Mayflower and its agents Century and

8

Admiral "had a specific intent to defraud Ms. Chen." (Proposed 2nd Am. Compl. at ¶¶9, 12 and ¶71.) Chen includes similar detailed allegations with respect the other claimed predicate acts, the alleged wrongful activities toward Craig Pietrowiak, Kate Rice, and Gerald and Minna Aronoff. (*Id.* at ¶¶86-112.)

The fraud allegations in this case are similar to those in *Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F.3d 1041 (7th Cir. 1998), in which the Seventh Circuit reversed summary judgment entered against the plaintiffs. The plaintiffs alleged that the defendants engaged in a "bait and switch" scheme in which the defendants made false promises about the quality of care that the residents of a nursing home would receive and a false promise that a resident would be permitted to stay in the Peoria facility as a Medicaid patient even if she were to exhaust her private funds. The Seventh Circuit agreed with the district court that the complaint adequately alleged a pattern of racketeering activity. 142 F.3d at 1050. Likewise, Chen's allegations of a "bait and switch" scheme of false promises upon which Chen allegedly relied sufficiently allege mail and wire fraud.

Mayflower also argues that the actions alleged are not criminal offenses, but cites no authority to support its position that Chen's allegations of extortion and theft from interstate shipment are inadequate as a pleading matter. (Def.'s Resp. at 7.)[3]

---

[3] Mayflower refers to allegations of "robbery" (Deft's Resp. at 7), but Chen's proposed 2nd Amended Complaint does not attempt to allege robbery. Theft from interstate shipment, which Chen does allege, does not require proof of actual or threatened force, but rather includes anyone who

> embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deceptions obtains from any... motortruck, or other vehicle... with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express or other property...

18 U.S.C. §659.

9

Finally, Mayflower argues that the acts that Chen alleges are illegal are, in fact, authorized by Mayflower's tariff. (Def.'s Resp. at 7-9). In support of that argument, Mayflower attaches certain exhibits to its Response, including a copy of its tariff, and urges the Court to "go beyond the proposed pleading and look at the evidence." (Deft's Resp. at 7, n.3.) However, there is no express authority in Rule 15 for converting a *plaintiff's* motion for leave to amend under Rule 15 into a *defendant's* motion for summary judgment under Rule 56. *Cf.* Fed. R. Civ. P. 12(b). Following Mayflower's suggestion would also eliminate the useful format for summary judgment motions mandated by Local Rule 56.1. Thus, this Court excludes from consideration on this motion the exhibits attached to Defendant's Response. For the same reason, the Court disregards exhibit B (certain Superceding Indictments) attached to the Plaintiff's Reply.

### 3. A pattern.

Mayflower argues that no "pattern and practice" (sic) is alleged in Chen's proposed Count V. (Deft's Resp. at 10.) However, *Corley*, 142 F.3d 1041, demonstrates that Chen has sufficiently alleged a pattern of racketeering activity. The pattern requirement means that

> in addition to at least two predicate acts, a RICO plaintiff must show 'that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.'

*Corley*, 142 F.3d at 1048, quoting *H. J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). The predicate acts here are related, in that they have the same or similar purposes, results, participants, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents. The participants are Mayflower and its local agents. The purpose and result is to obtain monies in excess of the original estimates by holding the individual's property until the individual pays the additional amounts. The method is to obtain the

10

individual's property and subsequently demand additional amounts for claimed additional services, refusing to release the property until the amounts are paid.

The final element is continuity, the threat of continued or continuing criminal activity.

> Continuity, the Court observed, is both a closed- and open-ended concept, in that it refers "either to a closed period of repeated conduct or to past conduct that by its nature projects into the future with a threat of repetition."

*Corley*, 142 F.3d at 1048, quoting *H. J. Inc.*, 492 U.S. at 241. Closed-end continuity can be proven by a series of related predicates extending over a substantial period of time, usually not merely a few weeks or months. *Corley*, 142 F.3d at 1048. Open-end continuity may involve predicate acts occurring over a short period of time so long as there is a threat that the conduct will occur in the future. (*Id.*) Here, Chen's allegations arguably fit both types. She alleges acts that occurred in 1994 (Rice and Aronoff) and 1999 (Chen and Pietrowiak) and also alleges that the members of the Enterprise associate "on an ongoing basis." (Proposed 2nd Am. Compl. at ¶ 62.) She further alleges that, on information and belief, the Enterprise used mail or interstate wire to further additional schemes to induce other individuals to contract with the participants in the Enterprise for moving services and to surprise these individuals with additional charges after the individuals have surrendered control over their property to the participants in the Enterprise. (*Id.* at ¶113.) Mayflower dismisses this as "a thinly veiled pitch for more discovery," (Def.'s Resp. at 13), however, the similarities between Chen's pleading and that of the plaintiffs in *Corley* are striking, and the Seventh Circuit's conclusion in *Corley* compels the result here:

> Corley's complaint identifies certain other Rosewood residents to whom various misrepresentations were communicated, and with respect to the identified residents, he details the circumstances of the alleged frauds with sufficient particularity. To the extent the complaint makes allegations relating to other classes of unidentified Rosewood residents, however, we believe that Rule 9(b)'s particularity requirement must be relaxed if, at the time the complaint was filed, Corley had been denied access in discovery to information that would identify those residents. Predicate acts of

11

racketeering relating to those residents may be pled more generally, as Corley has done here by referencing his own experiences with Rosewood in contracting for the car of his mother and alleging in some detail that other residents and their relatives also were victimized by the identical scheme. In sum, then, we agree with the district court that Corley's fourth amended complaint satisfies the particularity requirements of Rule 9(b) and sufficiently alleges a pattern of racketeering activity. It was therefore not subject to dismissal for failure to state a claim.

*Corley*, 142 F.3d at 1051. Chen has adequately alleged a RICO claim, and is entitled to move forward with discovery on it.

### Chen has adequately pleaded a claim under Section 1962(d).

Mayflower's arguments against Chen's Section 1962(d) conspiracy claim merely reiterate Mayflower's previous arguments that Chen has not stated a substantively sufficient RICO claim, and that Mayflower cannot conspire with its agents. As discussed above, Chen's allegations sufficiently plead a RICO claim. Mayflower's second argument consists of the single sentence that "Mayflower and its agents [are] one person in the eyes of the law," referring back to its single citation of the *Wagner* case. (Def.'s Response at 15.) Again, Mayflower's argument is far too simplistic. The intracorporate conspiracy doctrine, which provides that a generally corporation cannot conspire with its officers or employees acting within the scope of their employment, or with its unincorporated divisions or wholly owned subsidiaries *(Copperweld Corporation v. Independence Tube Corp.*, 467 U.S. 752, 769-70 (1984) (alleged conspiracy to violate Sherman Act)) is itself, as the Seventh Circuit has noted, subject to a number of exceptions. *See Hartman v. Board of Trustees of Community College*, 4 F. 3d 465, 470 (7th Cir. 1993); *Payton v. Rush-Presbyterian-St. Luke's Medical Center*, 184 F.3d 623, 632-33 (7th Cir. 1999) (applying doctrine to in claims pursuant to 42 U.S.C. §1985).[4]

---

[4] The Seventh Circuit, citing *Copperweld*, has also noted "the frequent asymmetry in the legal treatment of integrated and nonintegrated firms: under antitrust conspiracy law, for example, a firm can conspire with its dealers but it cannot conspire with its subsidiaries or employees."

12

In this case, Chen's RICO claim can be fairly read to plead that Century and Admiral, which are separately-owned corporate entities that are engaged from time to time to act for some purposes as local agents for Mayflower, conspired with Mayflower and other local agents to commit illegal acts to obtain additional monies from customers for their own benefit and for the benefit of the Enterprise, not solely for the benefit of the principal Mayflower. Mayflower has failed to demonstrate that there are no set of facts that Chen can prove that would enable her to prove a conspiracy among those entities.

## CONCLUSION

For the foregoing reason, plaintiff's Motion for Leave to File Instanter Plaintiff's Second Amended Complaint is GRANTED.

**IT IS SO ORDERED.**

GERALDINE SOAT BROWN
**United States Magistrate Judge**

**DATED: May 25, 2001**

---

*Fitzgerald*, 116 F.3d at 228.