# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Geraldine Soat Brown | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6261 | **DATE** | 8/13/2004 |
| **CASE TITLE** | Chen vs. Mayflower Transit, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  For the reasons set out in the Memorandum Opinion and Order, Plaintiff's Motion to Strike Rule 26(a)(1) Witness Disclosure and to Exclude Testimony [126-1] is granted as to Joseph Harrison. Enter Memorandum Opinion and Order. *Geraldine Soat Brown*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 13 2004 | 132 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | 15 | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | 8/13/2004 | |
| | | 2004 AUG 13 PM 3:13 | date mailed notice | |
| GR | courtroom deputy's initials | Date/time received in central Clerk's Office | GR mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANGIE CHEN, | ) |
| | ) |
| Plaintiff, | ) Cause No. 99 C 6261 |
| | ) |
| v. | ) Magistrate Judge Geraldine Soat Brown |
| | ) |
| MAYFLOWER TRANSIT, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's Motion to Strike Rule 26(a)(1) Witness Disclosure and to Exclude Testimony. [Dkt 126.] That motion was previously granted regarding the disclosure by defendant Mayflower Transit, Inc. ("Mayflower) of Steven Dawkins and denied (with certain conditions) as to the disclosure of Terry Webb, with ruling reserved as to the disclosure of Joseph Harrison. [Dkt 127, 130.] Mayflower was permitted to submit Defendant's Suggestions in Support of Proffer of Testimony of Joseph M. Harrison. [Dkt 130, 131.] After reviewing all of the submissions, including Defendant's Suggestions, and hearing the arguments of counsel, Plaintiff's Motion to Strike is GRANTED as to Joseph M. Harrison.

## PROCEDURAL BACKGROUND

The present motion has a lengthy background. After plaintiff Angie Chen ("Chen") was given leave to file an amended complaint including a claim under the Racketeer Influenced Corrupt Organizations ("RICO") Act, a discovery schedule was established which required disclosures by

1

Mayflower under Federal Rule of Civil Procedure 26(a)(2) to be made by April 30, 2002. (Order, July 18, 2001.) [Dkt 57.] Subsequently, fact discovery was extended a number of times, ultimately until September 30, 2002. (Order, March 13, 2002.) [Dkt 83.][1] At a status hearing on June 12, 2002, Mayflower's counsel advised the court that it did not expect any further expert disclosures. At a status hearing in January 10, 2003, the parties agreed that discovery was closed, and a dispositive motion schedule was set. (Order, Jan. 10, 2003.) [Dkt 92.] It is undisputed that Mr. Harrison had not been disclosed as a witness, either as a fact witness or pursuant to Rule 26(a)(2).

Mayflower attached an affidavit from Mr. Harrison as part of its materials in support of its motion for summary judgment. [Dkt 97.] Chen moved to strike that affidavit and other parts of Mayflower's summary judgment materials. [Dkt 98.] That motion was granted, and Mayflower was given leave to file a revised motion for summary judgment. (Order, April 14, 2003.) [Dkt 101.] Mayflower subsequently filed a revised motion for summary judgment, again submitting an affidavit from Mr. Harrison. [Dkt 102, 103.] Chen again moved to strike that affidavit, arguing, *inter alia*, that Mr. Harrison had not been properly disclosed as a witness, and that his affidavit contained proposed expert testimony, although Mr. Harrison had not been disclosed as an expert. (Pl.'s Second Mot. Strike at 2-4.) [Dkt 108.] That motion was taken with the motion for summary judgment and denied as moot because, although Chen's arguments had force, the inadmissible testimony was disregarded by the court. (Mem. Opinion and Order, Mar. 11, 2004 at 59.) [Dkt 119.]

Trial is set to begin on October 4, 2004. On May 21, 2004, Mayflower served Defendant's Supplemental Rule 26(a)(1) Witness Disclosure, listing Joseph Harrison, Steven Dawkins, and Terry

---

[1] In addition, Chen requested and on July 31, 2002 was allowed an extension until October 30, 2002 to serve any additional Rule 26(a)(2) disclosures. (Order, July 31, 2002.) [Dkt 88.]

2

Webb. (Pl.'s Mot. Strike Rule 26(a)(1) Witness Disclosure, Ex. A, Def.'s Supplemental Rule 26(a)(1) Witness Disclosure.) [Dkt 126.] Chen moved to strike that supplemental disclosure, and as noted above, following argument, that motion was granted as to Mr. Dawkins, denied with conditions as to Mr. Webb, and ruling was reserved as to Mr. Harrison. (Order, June 30, 2004; Order, July 28, 2004.)

Mayflower originally argued that the disclosure of Mr. Harrison was not untimely because he had been disclosed during discovery, by way of the affidavit submitted in support of Mayflower's motion for summary judgment. (Def.'s Opp'n Pl.'s Mot. at 8.) [Dkt 128.] However, that argument was premised on Mayflower's mistaken belief that Mr. Harrison's affidavit had been signed in December *2001*. (*Id.*) In fact, Mr. Harrison's first affidavit was signed in December *2002*, and was served with Mayflower's materials in support of its first motion for summary judgment in March *2003*. (Mayflower's Stmt. Material Facts, Ex. D.) [Dkt 97.] All of those dates were after the close of discovery. Chen argues that any testimony by Mr. Harrison is precluded by Fed. R. Civ. P. 37(c). Mayflower asserts that any late disclosure is harmless.

It is undisputed that Mayflower has never made (or sought to make) a Rule 26(a)(2) disclosure regarding Mr. Harrison, and it is clearly too late to do so. *See, e.g., Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757-58 (7th Cir. 2004) (stating that "[f]ormal disclosure of experts is not pointless. . . . [T]here are countermeasures that could have been taken that are not applicable to fact witnesses . . . ."). Thus, Mr. Harrison will not be permitted to offer testimony pursuant to Rules 702, 703 or 705 of the Federal Rules of Evidence. At the oral argument on Chen's motion to strike, the court questioned whether it is necessary to decide if a late disclosure of Mr. Harrison under Rule 26(a)(1) could be permitted if the testimony Mayflower expects him to present would be Rule 702

testimony. Mayflower was given leave to submit its Suggestions as an offer of proof in support of its argument that Mr. Harrison's testimony would not be Rule 702 testimony.

## ANALYSIS

Rule 701 and Rule 702 Testimony

Mayflower argues that Mr. Harrison's testimony is admissible pursuant to Federal Rule of Evidence 701. (Def.'s Suggestions at 1.) Federal Rule of Evidence 701 provides that a witness who is not testifying as an expert may offer opinions or inferences that are:

> (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) *not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.*

Fed. R. Evid. 701 (emphasis added). Lay opinion testimony "most often takes the form of a summary of first-hand sensory observations." *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) (citing *Asplundh Mfg. Div. v. Benton Harbor Engr.*, 57 F.3d 1190, 1196-1202 (3d Cir. 1995)). In the *Conn* case, the Seventh Circuit quoted the "helpful summary of lay opinion testimony" expressed by the Third Circuit in the *Asplundh* case:

> The prototypical example of the type of evidence contemplated by the adoption of Rule 701 relates to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences. . . . Other examples of this type of quintessential Rule 701 testimony include identification of an individual, the speed of a vehicle, the mental state or responsibility of another, whether another was healthy, the value of one's property.

*Id.* at 554 n. 2 (quoting *Asplundh*, 57 F.3d at 1196-98). "Lay opinion testimony is admissible only

4

to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *Id.* at 554 (quoting *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001)).

Expert opinion testimony, on the other hand, need not be based on first hand knowledge of the facts of the case. Expert opinion "brings to an appraisal of those facts a scientific, technological or other specialized knowledge that the lay person cannot be expected to possess." *Id.* Rule 701 was amended in 2000 "to ensure[] that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 and Fed. R. Crim. P. 16 by simply calling an expert witness in the guise of a layperson." Advisory Committee Notes, 2000 Amendments to Rule 701.

Mr. Harrison's Proposed Testimony

According to Mayflower, Mr. Harrison has been the President of the American Moving and Storage Association ("AMSA") for 23 years. (Suggestions at 1.) Mayflower does not claim that Mr. Harrison is now or ever has been employed by Mayflower, or by any of the affiliated local companies involved in Chen's move, or that he has any personal knowledge of the events surrounding Chen's move or her transaction with Mayflower. Mayflower states that Mr. Harrison will testify regarding "the pricing practices of those moving companies which are AMSA members and the role of tariffs in the household goods moving industry." (*Id.*) Mr. Harrison states that he intends to use "the business records of AMSA" as a basis for his testimony. (*Id.*, Proffer of Testimony of Joseph M. Harrison ¶ 2.)

Surprisingly, Mr. Harrison's Proffer is virtually word-for-word the original affidavit signed

5

by Mr. Harrison in December 2002, which was stricken in April 2003. *See* Pl.'s Reply Supp. Pl.'s Mot. Strike, Ex. 5, Aff. Supp. Summ. J. [Dkt 129.] The Proffer, like the affidavit, is replete with inadmissible opinions on legal issues. Those portions that are not opinions on legal issues are clearly Rule 702 testimony. The following excerpts are illustrative:

> The business structure of all household goods van lines, including Mayflower Transit, is a reflection of the ICC's defined circumstances and the current regulatory structure maintained under the purview of the U.S. Department of Transportation. (Proffer ¶ 6.)
>
> In effect, the ICC delegated the primary responsibility for drafting tariffs to the industry with ICC review upon their submission (filing) to the ICC. . . . All industry-drafted tariffs, whether or not modified by the ICC, were treated by the ICC like any other tariff, and *like any other tariff they had the force of law under the filed rate doctrine.* (*Id.* ¶ 9) (emphasis added.)
>
> For the household goods moving industry, nothing has changed following the passage of ICCTA except the substitution of other federal agencies for the ICC. Individual carriers and industry groups continue to draft and publish their own tariffs, subject to potential invalidation or amendment by the STB, *and those tariffs are still treated like government-created tariffs, with the force of law.* (*Id.* ¶ 10) (emphasis added.)
>
> As a matter of industry terminology, "not to exceed" or "guaranteed not to exceed" refers to an estimate by which the customer pays the lower of the estimated cost or the actual cost based upon the actual weight and services provided on the estimate. (*Id.* ¶ 15.)

Had Mr. Harrison been disclosed pursuant to Rule 26(a)(2), there might have been an argument as to whether his expert opinion on the "industry" meaning of the terms "not to exceed" or "guaranteed not to exceed" would be admissible (especially in light of the fact that Chen is not a member of the moving industry). But there is no doubt that such testimony falls under Rule 702's category of "specialized knowledge." *See, e.g., WH Smith Hotel Servs., Inc. v. Wendy's Intl., Inc.*, 25 F. 2d 422, 428-29 (7th Cir. 1994) (holding that court did not err in interpreting lease using

testimony of "expert in real estate leases"); *but see Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 366 (7th Cir. 1990) (error to permit lawyer to testify as to meaning of contact term based on legal research).

In support of its position that the Proffer is Rule 701 testimony, Mayflower cites two opinions, *West Tennessee Chapter of Associated Builders & Contractors, Inc. v. City of Memphis*, 219 F.R.D. 587 (W.D. Tenn. 2004), and *Tampa Bay Shipbuilding & Repair Co. v. Cedar Ship. Co., Ltd.*, 320 F.3d 1213 (11th Cir. 2003). Neither case supports Mr. Harrison's proposed testimony.

The *West Tennessee Chapter* case involves a challenge to Memphis, Tennessee's minority set-aside ordinance. In 1994, D.J. Miller and Sherry Williams Miller performed a disparity study that was used by the Memphis City Council as the basis for passing the ordinance. 219 F.R.D. at 588, 589. The City proposed to present the Millers to testify as to how the study was written and how its conclusions were formulated. *Id.* at 590. The court concluded that it would permit that testimony because the testimony was limited to personal knowledge the Millers had gained while conducting the disparity study, and thus was Rule 701, not Rule 702, testimony. *Id.* In addition, the court noted that the Millers' personal information would be welcome to the finder of fact because the methods of the study were at the center of the controversy before the court.

However, *West Tennessee Chapter* is not persuasive here. In addition to the unique circumstances of the testimony at issue there (including the question of whether the Millers' testimony is appropriately characterized as opinion evidence), which are not applicable to Mr. Harrison's proposed testimony, that decision relies on an interpretation of Rule 701 that predates the 2000 amendment to that Rule and has been rejected by the Seventh Circuit. The court in *West Tennessee Chapter* cited *Teen-Ed, Inc. v. Kimball Intl., Inc.*, 620 F.2d 399 (3d Cir. 1980), as

7

permitting an accountant to testify under Rule 701 regarding how lost profits could be calculated based on his personal knowledge of the plaintiff's balance sheets, although he was an expert on the use of accepted accounting principles in the calculation of business losses. 219 F.R.D. at 590. However, as noted above, Rule 701 was amended in 2000 (twenty years after the *Teen-Ed* case) expressly to preclude testimony based on specialized knowledge. *West Tennessee Chapter* also relied on a Sixth Circuit opinion, *United States v. Wells*, 211 F.3d 988 (6th Cir. 2000), which affirmed a decision to allow physicians to testify as to opinions regarding treatment based on their first hand observations and treatment without being disclosed as experts. *West Tennessee Chapter*, 219 F.R.D. at 590. However, under the Seventh Circuit's interpretation of Rules 701 and 702, "a treating doctor ... is providing expert testimony if the testimony consists of opinions based on 'scientific, technical, or other specialized knowledge' regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation." *Musser*, 356 F.3d at 756 n. 2. Notably, the Sixth Circuit's opinion in *United States v. Wells* cited the Seventh Circuit's opinion in *Richardson v. Consolidated Rail Corp.*, 17 F.3d 213 (7th Cir. 1994). *See Wells*, 211 F.3d at 998. *See also West Tennessee Chapter*, 219 F.R.D. at 590. However, in *Musser*, the Seventh Circuit backed away from its statement in *Richardson* (which was cited in *Wells* and *West Tennessee Chapter*), observing that *Richardson* was interpreting an earlier version of Rule 26 and Rule 701. *Musser*, 356 F.3d at 756 n. 2.

*Tampa Bay Shipbuilding* is inapplicable here. In that case, the Eleventh Circuit held that it was not an abuse of discretion for the judge in a bench trial to admit the testimony of the employees and officers of the plaintiff ship repair business that the charges for the repair services performed by the plaintiff, for which the plaintiff sought payment, were reasonable. *Tampa Bay Shipbuilding*, 320

F.3d at 1223. In doing so, the court specifically looked to the Advisory Committee Notes to the 2000 amendments to Rule 701, which express an intention to leave undisturbed "prototypical" Rule 701 testimony including testimony by business owners and officers based on knowledge derived from their positions in the business. 320 F.3d at 1222. The Advisory Committee Notes observe that courts have permitted an officer of a business to testify about damages based on his personal knowledge and day-to-day experience with the business, without having to qualify as an expert. Advisory Committee Notes, 2000 Amendments to Rule 701. In the present case, in contrast, there is no suggestion that Mr. Harrison has ever been an employee, officer or owner of Mayflower. He is the president of a trade organization that is not even a party to the case. He would not be testifying to damage calculations but rather making broad general statements and opinions about the laws, regulations and practices of the industry. The distinction between the *Tampa Bay Shipbuilding* case and Mr. Harrison's proposed testimony is further illustrated by the fact that the owners' testimony was presumably based on the records of their business, which was the plaintiff in the case. Here, Mr. Harrison's testimony would be based on unspecified records of non-party AMSA. (Proffer ¶ 2.)

This case will be a jury trial, not a bench trial. In a jury trial the judge has a particular responsibility to avoid "allow[ing] the jury to infer that it could look to [a] witness for legal guidance." *Harbor Ins.*, 922 F.2d at 366. That inference is the apparent purpose of Mayflower's proffer of Mr. Harrison's testimony.

Additionally, even if it were assumed that there is some part of Mr. Harrison's testimony that could be admitted (which Mayflower has not demonstrated), the prejudice to Chen in allowing this untimely disclosed testimony by Mr. Harrison is apparent, and could not be cured simply by allowing Chen to take Mr. Harrison's deposition, as was done with Mr. Webb. Mr. Harrison's Proffer

discusses "industry -wide" practices and is based on the AMSA's business records. (Proffer ¶¶ 2, 16.) Additional discovery would certainly be necessary, delaying the trial that is set to begin shortly. Mayflower has not made any effort to justify why Mr. Harrison was not disclosed as a witness during the eighteen months from April 2001 to September 2002 when discovery on the RICO claim was open.

## CONCLUSION

For the forgoing reasons, Plaintiff's Motion to Strike Rule 26(a)(1) Witness Disclosure and to Exclude Testimony is granted as to Joseph Harrison.

IT IS SO ORDERED.

/Geraldine Soat Brown
United States Magistrate Judge

August 13, 2004